**Case No. 25-6970**

---

## THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

DEBORAH JOHNSTON, in her official capacity as State Registrar of Vital Records and Interim Director of the Arizona Department of Health Services,

*Defendant-Appellant,*

*v.*

HELEN ROE, a minor, by and through her parent and next friend Megan Roe; et al.,

*Plaintiffs-Appellees.*

---

On Appeal from the United States District Court
for the District of Arizona

No. 4:20-cv-00484

---

## OPENING BRIEF OF APPELLANT

---

Nathan Arrowsmith (AZ Bar No. 031165)
Lauren Watford (AZ Bar No. 037346)
Timothy Horley (AZ Bar No. 038021)
OFFICE OF THE ARIZONA
  ATTORNEY GENERAL
2005 N. Central Ave. Phoenix, AZ 85004
(602) 542-3333
Nathan.Arrowsmith@azag.gov
Lauren.Watford@azag.gov
Timothy.Horley@azag.gov
ACL@azag.gov

*Counsel for Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ iv

INTRODUCTION ..................................................................................... 1

STATEMENT OF JURISDICTION ........................................................... 3

STATEMENT OF ISSUES ......................................................................... 3

ADDENDUM .............................................................................................. 5

STATEMENT OF THE CASE ...................................................................... 5

I.     Legal Background ................................................................................ 5

     A.     Relevant Law ........................................................................ 5

     B.     Purpose and History of Arizona's Vital Records Laws .............. 11

II.     Procedural History .......................................................................... 13

     A.     District Court Litigation ................................................... 13

     B.     Post-Judgment Activity and the Instant Appeal ...................... 16

STANDARD OF REVIEW ....................................................................... 17

SUMMARY OF ARGUMENT ................................................................... 18

ARGUMENT .............................................................................................. 20

I.     Arizona's birth certificate amendment procedures are facially
     constitutional. .................................................................................. 20

     A.     The district court misconstrued the statute's plain text
           and context. ......................................................................... 21

           1.     The challenged statute and regulation must be
                 read in context, and when they are, Plaintiffs'
                 claims easily fail. ................................................... 21

2.    Record evidence shows the challenged provisions have constitutional applications. ........................................25

II.   Plaintiffs' facial equal protection challenge fails. .................................32

A.    A.R.S. § 36-337(A)(3) does not, on its face, classify on the basis of sex or transgender status, so Plaintiffs' facial equal protection challenge fails. ..........................................32

B.    Section 36-337(A)(3) and its implementing regulation, R-9-19-208(O), undisputedly have constitutional applications, dooming Plaintiffs' facial equal protection challenge. ........................................................................34

C.    Section 36-337(A)(3) is, at most, subject to rational basis review because it is a facially neutral affirmative provision and does not classify on any suspect basis.................35

D.    The State's important and legitimate interest in maintaining the integrity of vital records is rationally related its birth certificate amendment process, so the challenged provisions survive rational basis review.................38

E.    The challenged provisions also satisfy heightened scrutiny...........................................................................40

III.  Plaintiffs' facial due process challenges fail. ........................................41

A.    Arizona's birth certificate amendment process facially burdens no fundamental right and plainly has constitutional applications...........................................42

B.    The challenged provisions are simply an affirmative avenue of relief offered alongside others and do not *require* Plaintiffs to do anything, so only rational basis applies. ...........................................................................44

C.    The district court confused Plaintiffs' facial challenge to (A)(3) with an as-applied challenge to (A)(4).............................46

D.   Section 36-337(A)(4)'s court order process does not burden any fundamental rights. ....................................................46

E.   Because no fundamental rights are burdened, rational basis applies to Plaintiffs' substantive due process claims, and the challenged provisions easily survive.................51

IV.  The district court improperly rewrote the statute and created an unworkable new regime.......................................................51

V.   The district court should have abstained from the Plaintiffs' collateral attack on unfavorable state court rulings under *Railroad Commission of Texas v. Pullman*. .................................................56

CONCLUSION ...................................................................60

ADDENDUM.....................................................................62

CERTIFICATE OF COMPLIANCE ...................................................91

CERTIFICATE OF SERVICE ...........................................................92

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizonans for Off. Eng. v. Arizona,*
520 U.S. 43 (1997) ..................................................................54

*Ayotte v. Planned Parenthood,*
546 U.S. 320 (2006) ...............................................................52

*Baird v. Bonta,*
163 F.4th 723 (9th Cir. 2026) ................................... 34, 42, 43

*Barr v. Am. Ass'n of Political Consultants, Inc.,*
591 U.S. 610 (2020) ........................................................ 52, 54

*Beatie v. Beatie,*
333 P.3d 754 (Ariz. Ct. App. 2014)..................... 30, 31, 32, 34, 53, 56, 59

*Bowen v. Roy,*
476 U.S. 693 (1986) ..............................................................39

*Burdick v. Takushi,*
846 F.2d 587 (9th Cir. 1988).................................................59

*California v. Trump,*
963 F.3d 926 (9th Cir. 2020)................................... 21, 22, 29, 34

*Calvary Chapel Bible Fellowship v. County of Riverside,*
948 F.3d 1172 (9th Cir. 2020)............................................ 34, 42

*Civil Beat Law Ctr. for Pub. Interest, Inc. v. Maile,*
117 F.4th 1200 (9th Cir. 2024) ..............................................50

*Clark v. Jeter,*
486 U.S. 456 (1988) ...............................................................48

*Curtis v. Inslee,*
154 F.4th 678 (9th Cir. 2025) ........................................... 41, 42

*Dent v. Sessions*,
    900 F.3d 1075 (9th Cir. 2018)......................................................38

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*,
    489 U.S. 189 (1989) ...................................................... 44, 45, 50

*Driftless Area Land Conservancy v. Valcq*,
    16 F.4th 508 (7th Cir. 2021) ........................................................52

*Gore v. Lee*,
    107 F.4th 548 (6th Cir. 2024) ........................................ 11, 21, 39, 41, 45, 58

*Hecox v. Little*,
    104 F.4th 1061 (9th Cir. 2024) .....................................................58

*Hecox v. Little*,
    145 S. Ct. 2871 (2025) .................................................................58

*In re G.R.*,
    532 P.3d 1180 (Ariz. Ct. App. 2023).......................................... 48, 49

*In re Kirkland*,
    915 F.2d 1236 (9th Cir. 1990)......................................................54

*In re L.P.*,
    569 P.3d 411 (Ariz. Ct. App. 2025)........................................... 48, 49

*In re Marriage of McLaughlin & Swanson*,
    476 P.3d 336 (Ariz. Ct. App. 2020)................. 23, 24, 26, 27, 28, 53, 56, 59

*Lanier v. City of Woodburn*,
    518 F.3d 1147 (9th Cir. 2008)......................................................32

*Lopez-Valenzuela v. Arpaio*,
    770 F.3d 772 (9th Cir. 2014).......................................................42

*Lyng v. Int'l Union*,
    485 U.S. 360 (1988) ...................................................................47

*Metlakatla Indian Cmty. v. Dunleavy*,
    58 F.4th 1034 (9th Cir. 2023) ......................................................17

v

*Nadarajah v. Gonzales*,
443 F.3d 1069 (9th Cir. 2006).....................................................................22

*Nunez by Nunez v. City of San Diego*,
114 F.3d 935 (9th Cir. 1997).........................................................................54

*Pavan v. Smith*,
582 U.S. 563 (2017) ............................................................................. 39, 41

*Phx. Newspapers, Inc. v. Super. Ct. of Maricopa Cnty.*,
680 P.2d 166 (Ariz. Ct. App. 1983)............................................................50

*Portrero Hills Landfill, Inc. v. County of Solano*,
657 F.3d 876 (9th Cir. 2011)......................................................... 57, 59, 60

*Prete v. Bradbury*,
438 F.3d 949 (9th Cir. 2006).......................................................................39

*Puente Ariz. v. Arpaio*,
No. CV-14-01356-PHC-DGC, 2016 WL 6873294 (D. Ariz. Nov.
22, 2016) ....................................................................................................39

*Raidoo v. Moylan*,
75 F.4th 1115 (9th Cir. 2023) .....................................................................51

*Recchia v. City of Los Angeles*,
889 F.3d 553 (9th Cir. 2018).......................................................................17

*Roe v. Critchfield*,
137 F.4th 912 (9th Cir. 2025) ............................................................. 40, 41

*Roulette v. City of Seattle*,
97 F.3d 300 (9th Cir. 1996)..................................................... 24, 25, 26, 35

*R.R. Comm'n of Texas v. Pullman*,
312 U.S. 496 (1941) ................................................................ 5, 56, 57, 59, 60

*San Antonio Indep. Sch. Dist. v. Rodriguez*,
411 U.S. 1 (1973) ............................................................................ 35, 36, 44

*Smelt v. County of Orange*,
    447 F.3d 673 (9th Cir. 2006)................................................................ 57, 59

*Stambaugh v. Killian*,
    398 P.3d 574 (Ariz. 2017)..........................................................................22

*United States v. Carrillo-Lopez*,
    68 F.4th 1133 (9th Cir. 2023) ......................................................... 32, 33

*United States v. Metcalf*,
    156 F.4th 871 (9th Cir. 2025) .......................................................... 22, 54

*United States v. Rahimi*,
    602 U.S. 680 (2024) ............................................... 20, 28, 34, 35

*United States v. Salerno*,
    481 U.S. 739 (1987) ................................................... 20, 34, 40

*United States v. Skrmetti*,
    605 U.S. 495 (2025) ........................................ 18, 36, 38, 46, 51

*Valeria v. Davis*,
    307 F.3d 1036 (9th Cir. 2002)...................................................................33

*Vivid Entmt., LLC v. Fielding*,
    774 F.3d 566 (9th Cir. 2014).......................................................... 52, 53, 54

*West Virginia v. B.P.J.*,
    U.S. S. Ct. No. 24-43 (argued Jan. 13, 2026)...........................................58

## Statutes

28 U.S.C. § 1291.........................................................................................3

28 U.S.C. § 1331.........................................................................................3

28 U.S.C. § 1343.........................................................................................3

42 U.S.C. § 242k ................................................................................. 11, 38

42 U.S.C. § 1983.........................................................................................3

42 U.S.C. § 1988 ................................................................................3

A.R.S. § 12-2101(A)(1) ....................................................................28

A.R.S. § 36-301(35) ...........................................................................5

A.R.S. § 36-302 ................................................................ 5, 9, 10, 11

A.R.S. § 36-321(A) ................................................................ 5, 12, 22

A.R.S. § 36-323(A) ..........................................................................22

A.R.S. § 36-324 ........................................................................ 11, 38

A.R.S. § 36-333 ................................................................................11

A.R.S. § 36-337 ................................................... 5, 7, 8, 22, 39

A.R.S. § 36-337(A) ...................................................................passim

A.R.S. §  36-337(A)(1) ........................................................ 7, 22, 25

A.R.S. § 36-337(A)(2) .......................................................... 7, 22, 25

A.R.S. § 36-337(A)(3) ...............................................................passim

A.R.S. § 36-337(A)(4) ...............................................................passim

A.R.S. § 36-337(G) .......................................................... 45, 49

A.R.S. § 36-351 ...............................................................................11

**Rules**

9th Cir. R. 28-2.7 ...............................................................................5

Ariz. R. Civ. P. 5.4 ..........................................................................49

Fed. R. App. P. 3(c)(4) .......................................................................3

Fed. R. App. P. 4(a)(1)(A) ..................................................................3

Fed. R. Civ. P. 30(b)(6) ......................................................................6

Fed. R. Civ. P. 65 .......................................................... 3, 4, 15, 19, 55, 56

**Regulations**

A.A.C. R9-19-103 ........................................................................25

A.A.C. R9-19-201 ..........................................................................6

A.A.C. R9-19-207 ..........................................................................7

A.A.C. R9-19-208 ...................................................................passim

**Other Authorities**

John Harrison, *Severability, Remedies, and Constitutional Adjudication*,
    83 Geo. Wash. L. Rev. 56 (2014) ...............................................52

New Oxford American Dictionary (3rd ed. 2010)...........................................29

Susan J. Pearson, *The Birth Certificate: An American History* (2021)..............11

## INTRODUCTION

This case is a narrow facial challenge to a subsection of a statute and a subsection of an administrative rule. Those provisions, A.R.S. § 36-337(A)(3) ("(A)(3)"), and Ariz. Admin. Code ("A.A.C.") R9-19-208(O) ("208(O)"), require the Director of the Arizona Department of Health Services (the "Department") to amend a birth certificate when she receives a written physician's verification from "a person who has undergone a sex change operation."

Contrary to Plaintiffs' belief, the plain text of (A)(3) does not require any person to undergo any surgical procedure as a prerequisite for amending their birth certificate. This is clear from the broader context of § 36-337(A), which says that the Director "shall amend" an Arizona birth certificate when she receives four different types of supporting evidentiary documents, including a written physician's verification from "a person who has undergone a sex change operation." If the Arizona Legislature wanted to say that *only* persons who have "undergone a sex change operation" may change the sex field on their birth certificate, it could have done so. But it did not.

1

Instead, the Legislature required the Director to accept another type of evidentiary document that can support a request to amend the sex field on a birth certificate: the Director must amend a birth certificate when she receives a court order ordering her to amend the birth certificate. A.R.S. § 36-337(A)(4) ("(A)(4)"). The Arizona Court of Appeals has made clear that Arizona courts have broad authority to order amendments to birth certificates. Indeed, (A)(4) contains no textual limit on who may obtain a court order or what fields may be amended via court order. The record shows the Director has amended the sex field on birth certificates when presented with a court order. And, importantly, context shows that (A)(4) is not connected to (A)(3)—each requires the Director to accept a different, independent type of evidentiary document. Accordingly, every person born in Arizona can petition a court to amend any field on their Arizona birth certificate, including the sex field, without providing proof of having "undergone a sex change operation."

The district court adopted Plaintiffs' misinterpretation of (A)(3) and found it to be facially unconstitutional under the Equal Protection and Due Process Clauses of the Fourteenth Amendment. The district court then exceeded its authority by entering a permanent injunction that rewrites

(A)(3) and 208(O) and fails to comply with Federal Rule of Civil Procedure 65. The Director sympathizes with the Plaintiffs' desire to have vital records that accord with their identities. But a facial attack on (A)(3) is not the way to get what Plaintiffs want, because the plain text and undisputed facts show that (A)(3) does not prevent Plaintiffs—or anyone else—from amending the sex field on their birth certificate. This Court should reverse.

## STATEMENT OF JURISDICTION

The district court exercised subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 based on Plaintiffs' assertion of claims under the U.S. Constitution and 42 U.S.C. §§ 1983 and 1988. 4-DirectorER-611 ¶¶ 9–10.

28 U.S.C. § 1291 vests this Court with jurisdiction over the district court's final judgment. 1-DirectorER-003; *see* Fed. R. App. P. 3(c)(4).

The district court entered final judgment on September 30, 2025. 1-DirectorER-003. The Director timely filed her notice of appeal on October 30, 2025. 5-DirectorER-746–47; *see* Fed. R. App. P. 4(a)(1)(A).

## STATEMENT OF ISSUES

1. Did the district court misread the statute's text, context, and undisputed record evidence in concluding that A.R.S. § 36-337(A)(3) and

3

A.A.C. R9-19-208(O) impose a "Surgical Requirement" on transgender persons who wish to amend their birth certificates?

2. Do § 36-337(A)(3) and R9-19-208(O) facially violate the Fourteenth Amendment's Equal Protection Clause when they are neutrally worded, unmotivated by discriminatory intent, and when their plain text, context, undisputed record evidence, and case law demonstrate they have constitutional applications?

3. Do § 36-337(A)(3) and R9-19-208(O) facially violate the Fourteenth Amendment's Due Process Clause when their text imposes no burdens and when undisputed record evidence shows they have constitutional applications?

4. Does the district court's permanent injunction purporting to "strike" the word "operation" from A.R.S. § 36-337(A)(3) and A.A.C. R9-19-208(O) comply with Federal Rule of Civil Procedure 65 and relevant case law?

5. Does this case involve a sensitive question of federal constitutional law that likely would be mooted under state law if Plaintiffs had appealed their decisions in state court, and did the district court

therefore abuse its discretion in declining to abstain under *Railroad Commission of Texas v. Pullman*, 312 U.S. 496 (1941)?

## ADDENDUM

This case concerns an Arizona statute, A.R.S. § 36-337, and an Arizona regulation, A.A.C. R9-19-208. Both are included in full in the addendum filed concurrently with this brief. 9th Cir. R. 28-2.7.

## STATEMENT OF THE CASE

### I. Legal Background

### A. Relevant Law

The Director, in her capacity as state registrar, is charged with implementing "a statewide system of vital records," including birth certificates, "using the recommendations of the federal agency responsible for national vital statistics." A.R.S. § 36-302(B)(1).[1] The Director "shall prescribe by rule the information required to be submitted to create or amend a vital record." A.R.S. § 36-321(A); *see also* A.R.S. § 36-301(35) (vital record "means a registered birth certificate or registered death certificate").

---

[1] Though many provisions of the statute and regulation use the term registrar, the Director "is the state registrar of vital records." A.R.S. § 36-302(A). This brief thus uses the term "Director" for simplicity's sake.

5

Pursuant to this authority, the Director has prescribed by rule the information required to create a birth record. A.A.C. R9-19-201. Among the information included in a birth record is the newborn's sex at birth. A.A.C. R9-19-201(A)(3)(a). Sex at birth is determined by a healthcare worker or other person present at the birth who records the child's sex as "male," "female," or "not yet determined" based on the child's "observable anatomy" or "external genitalia." *Id.*; 2-DirectorER-087 ¶ 2, -096 ¶ 1.[2] This rule comports exactly with the U.S. Standard Certificate of Live Birth issued by the Centers for Disease Control and Prevention, National Center for Health Statistics ("NCHS"), which prescribes those three options and instructs that the sex of the infant is "based on physical characteristics presented at birth." 4-DirectorER-550, -553. The sex field does not document the newborn's gender identity (nor could it) because gender identity is "a person's inner sense of belonging to a particular sex" and is therefore not "observable" at birth. 2-DirectorER-089 ¶¶ 9–10.

---

[2] The Department's Rule 30(b)(6) witness testified in a deposition that some Arizona birth certificates list "nonbinary" in the sex field. 3-DirectorER-358:2–3. The witness clarified that this designation came as the result of the § 36-337(A)(4) court order amendment process. 3-DirectorER-358:15–20.

The Director has also prescribed by rule the information required to correct or amend a birth certificate. A.A.C. R9-19-207; R9-19-208. In addition to the administrative rules regarding amendments, the Legislature has also required the Director to amend birth certificates in certain circumstances. *See* A.R.S. § 36-337. Subsection (A) of that statute states that the Director "shall amend the birth certificate for a person born in" Arizona when she "receives any of the following" and then lists four categories of evidentiary documents:

> (1) "[A]n adoption certificate or a court order for adoption;"
>
> (2) "A voluntary acknowledgment of paternity;"
>
> (3) "A written request" and a "written [verification] by a physician" from "a person who has undergone a sex change operation or has a chromosomal count that establishes the sex of the person as different than in the registered birth certificate;" or
>
> (4) "A court order ordering an amendment."

A.R.S. § 36-337(A)(1)–(4). The other subsections of § 36-337 also require the Director to take certain actions with respect to the amendment of birth certificates: for example, (B) requires her change the name of the father on a

birth certificate in certain circumstances, (D) and (E) require her to retain information on a birth certificate following an adoption in certain circumstances, (G) requires her to seal previous birth certificates "and the evidentiary documents provided" after amending a birth certificate, and (H) requires the Director to unseal an original birth certificate if an adoption is annulled. A.R.S. § 36-337(B)–(H).

As noted above, the Director has adopted a rule providing over a dozen different procedures for amending different aspects of a birth certificate depending on the circumstances, such as amending a person's name within 90 days of birth or amending based on a voluntary acknowledgement of paternity. A.A.C. R-19-208(B)–(O). Two parts of that rule implement A.R.S. § 36-337(A) and are relevant here: subsections (B) and (O).

Subsection (B) implements (A)(4)'s requirement that the Director amend a birth certificate upon receipt of a court order, instructing persons who wish to amend a birth certificate to submit a written request containing certain information, a court order to amend specific information in the birth record, and an administrative fee. *See id.* R9-19-208(B). Like (A)(4),

Subsection (B) contains no limits on who can use this process, which part of the birth certificate may be amended, or for what reason.

Subsection (O) implements (A)(3)'s requirement that the Director must amend a birth certificate when she receives a written physician's verification from "a person who has undergone a sex change operation or has a chromosomal count that establishes the sex of the person as different from that in the registered birth record." *Id.* R9-19-208(O). Subsection (O) instructs persons who have undergone a sex change operation or had a chromosomal count to submit (1) the same written document required under subsection (B), plus specific information about the person's sex as registered in the birth certificate and the requested change to the sex field; (2) a "written statement on a physician's letterhead paper, signed and dated by the physician, that the individual has" either "[u]ndergone a sex change operation" or "[h]ad a chromosomal count that establishes the sex of the individual as different" from the birth certificate; and (3) a fee. *Id.*

The implementing regulations thus mirror § 36-337(A)(3)–(4) and roughly align with the NCHS Model State Vital Statistics Act, as directed by Arizona statute. *See* 2-DirectorER-088 ¶¶ 4–6; 3-DirectorER-399 § 21(d); A.R.S. § 36-302(B)(1). The Arizona approach does differ from the federal

9

Model Act in some ways, however. *See* A.R.S. § 36-302(B)(1) (Director to use federal guidelines "subject to modification"). That is, Arizona's amendment process is *more liberal* than the federal guidelines.

The Model Act provides that:

> Upon receipt of a certified copy of an order of (a court of competent jurisdiction) indicating the sex of an individual born in this State has been changed by surgical procedure and whether such individual's name has been changed, the certificate of birth of such individual shall be amended as prescribed by regulation.

3-DirectorER-399 § 21(d). Thus, unlike the federal Model Act, which would require a court order indicating a change of sex via surgical procedure, Arizona law requires the Director to accept two different forms of documentation for a request to amend the sex field on a birth certificate: a physician's written verification attesting to a sex change operation or chromosomal difference (with no need for a court order) *or* a court order directing an amendment (with no need for a physician's written verification). *See* A.R.S. § 36-337(A)(3)–(4). Arizona thus makes it easier to amend the sex field on the birth certificate than what the federal Model Act recommends.

### B. Purpose and History of Arizona's Vital Records Laws

Like all states, Arizona has long created and recorded information about live births in the form of birth certificates. *See* A.R.S. §§ 36-302, 36-333, 36-351; *Gore v. Lee*, 107 F.4th 548, 552 (6th Cir. 2024) (citing Susan J. Pearson, *The Birth Certificate: An American History* 189, 239 (2021)).

Information contained on the birth certificate, including sex, is used for Arizona vital statistics and related reports, to prepare national vital statistics, and for other "statistical or research purposes." 2-DirectorER-090–91 ¶¶ 16–17; *see, e.g.*, 4-DirectorER-573–76, -581, -593–95; A.R.S. §§ 36-324(A), (C); *see also* 42 U.S.C. § 242k(a), (g), (h) (prescribing the federal government to collect vital statistics from the states "for the purpose of improving the effectiveness, efficiency, and quality of health services in the United States").

Arizona's history of creating and recording birth certificates dates back to 1913, the year after it achieved statehood, when the State Legislature called for the registration of births and "the maintenance of a perfect system

11

of registration." 4-DirectorER-442 § 4416, 4-DirectorER-445 § 4422.[3]  The 1913 statute required a birth certificate to contain the child's sex, among many other items.  4-DirectorER-443–44 § 4418.  Arizona's Legislature revised the vital records statutes several times in subsequent decades without major changes until 1967. *See, e.g.*, 4-DirectorER-463–64, -479, -490.

That year, the Legislature removed the list of items to be listed on a birth certificate—including sex—and replaced it with a mandate that birth certificates "shall include as a minimum the items recommended by the federal agency responsible for national vital statistics." 4-DirectorER-503–04 § 36-321(A).  It also allowed for the provision of a new birth certificate following adoption, legitimation, paternity determination, or "surgical alterations." 4-DirectorER-507–08 § 36-326.  Thus, someone born in Arizona could receive a revised birth certificate if she provided the state registrar with a "sworn statement from a licensed physician in good standing that he has performed a surgical operation or a chromosomal count on a person and

---

[3] A more detailed account of Arizona's history of vital records laws, which Plaintiffs did not dispute, can be found in the Director's motion for summary judgment. *See* Doc. 230 at 2–6.  In this brief, the Director uses "Doc." for all citations to district court docket entries that do not appear in the excerpts of record.  "Dkt." refers to this Court's docket entries.

that by reason of this operation or count the sex of the person has been established as different from that in the original document." 4-DirectorER-508 § 36-326(A)(4).

The latest major statutory overhaul came in 2004, when the Legislature created the system that remains substantially in place to this day. The 2004 changes added the provision requiring the Director to amend a birth certificate upon receipt of a court order ordering an amendment. 4-DirectorER-536–37 § 36-337(A).

## II. Procedural History

### A. District Court Litigation

Plaintiffs filed their complaint on November 4, 2020. 5-DirectorER-717–38. Plaintiffs asserted four counts, arguing that A.R.S. § 36-337(A)(3) and A.A.C. R9-19-208(O) violate the Equal Protection Clause, and the Due Process Clause, specifically the substantive rights of privacy, individual liberty and decisional autonomy, and the choice of whether to undergo a particular medical treatment, respectively. 5-DirectorER-734–37.

Plaintiffs then filed two amended complaints, 4-DirectorER-607–710, resulting in the current Second Amended Complaint, which contains the

same Equal Protection and Substantive Due Process claims as the original complaint.  4-DirectorER-607–76.

The Director moved to dismiss, Doc. 56, and the district court denied the motion in its entirety, rejecting the Director's arguments that Plaintiffs lacked standing, that the court should abstain under federal abstention doctrines, that Plaintiffs' complaint failed to state a claim for relief, and that venue was improper.  1-DirectorER-033–49.

After the Director answered the complaint and the parties proceeded to discovery, the Plaintiffs shifted from seemingly asserting both an as-applied and a facial challenge to a facial challenge only, as the district court clarified in a discovery-related order.  4-DirectorER-605 & n.4.

Plaintiffs moved to certify their representation of a "class of transgender people who were born in Arizona but are unable to correct the sex listed on their birth certificates through the private administrative process created by A.R.S. § 36-337(A)(3)."  Doc. 89. Over the Director's objection, Doc. 169, the district court ultimately certified a class of: "All transgender individuals born in Arizona, now and in the future, who seek to change the sex listed on their birth certificate, but have not undergone a

'sex change operation' as treatment for their gender dysphoria." 1-DirectorER-026, -032.

On November 17, 2023, the parties cross-moved for summary judgment. Docs. 230, 232. Although each party expressed disagreement with how the other party presented the facts, 2-DirectorER-085–125, the parties ultimately agreed that there were no material factual disputes preventing summary judgment. 2-DirectorER-063:4–15, 2-DirectorER-075:12–15. After briefing and oral argument, the district court denied the Director's motion for summary judgment and granted the Plaintiffs' motion for summary judgment on all four counts. 1-DirectorER-012–24.

Plaintiffs then moved for a permanent injunction and entry of final judgment. Doc. 282. The Director objected on the ground that the Plaintiffs' proposed permanent injunction did not comply with Federal Rule of Civil Procedure 65 and was otherwise contrary to law. Doc. 287 at 2. The district court disagreed and entered a permanent injunction barring the Director from enforcing the word "'operation' from both Arizona Revised Statutes § 36-337(A)(3) and its implementing regulation Arizona Administrative Code R9-19-208(O)." 1-DirectorER-011.

On September 30, 2025, the district court entered final judgment. 1-DirectorER-003.

## B. Post-Judgment Activity and the Instant Appeal

On October 20, 2025, Arizona Senate President Warren Peterson and Arizona Speaker of the House of Representatives Steve Montenegro, who had previously submitted a brief as *amicus curiae* opposing Plaintiffs' motion for a permanent injunction, Doc. 288; 2-DirectorER-057, moved to intervene post-judgment as defendants for the purpose of appealing the district court's rulings. Doc. 314. The Legislators also moved to stay the district court's judgment pending appeal. Doc. 316. The district court granted the intervention motion. 2-DirectorER-054–56.

The Director timely filed her notice of appeal to this Court on October 30, 2025. 5-DirectorER-746–47; *see* Dkt. 1. The Legislator Intervenors filed their notice of appeal on the same day. 5-DirectorER-739–45.

On December 2, 2025, the Director asked this Court to stay the permanent injunction pending appeal and to administratively stay the injunction pending the resolution of the motion. Dkt. 4.1.

On December 19, a motions panel of this Court referred the motion to stay to the merits panel and placed this case on the April 2026 calendar. Dkt. 14.1.

On January 5, 2026, the Legislators moved for an administrative stay in the district court. Doc. 344. On January 21, the district court stayed the permanent injunction temporarily until it resolves the Legislators' motion to stay the permanent injunction pending the outcome of this appeal. 2-DirectorER-052–53. The district court expects that resolution to occur sometime in February or March of this year. 2-DirectorER-052. The district court's permanent injunction therefore has not yet gone into effect.

On January 28, 2026, this Court ordered the Director's and the Legislators' appeals to be consolidated. Dkt. 20.1.

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment de novo. *Recchia v. City of Los Angeles*, 889 F.3d 553, 558 (9th Cir. 2018). The Court reviews a decision to grant a permanent injunction for abuse of discretion, but the legal conclusions underlying the district court's decision are reviewed de novo. *Metlakatla Indian Cmty. v. Dunleavy*, 58 F.4th 1034, 1042 (9th Cir. 2023).

17

## SUMMARY OF ARGUMENT

The district court erred in several respects.

First, the district court misunderstood (A)(3) and 208(O). The plain text of those provisions, read in context, does not require any person to undergo any surgical procedure as a prerequisite to changing the sex field on an Arizona birth certificate. The district court also ignored relevant Arizona authority and undisputed facts in the record showing that § 36-337(A)(3) and R9-19-208(O) have plainly constitutional applications, even though this is a facial challenge. This error dooms all four of Plaintiffs' facial constitutional claims.

Second, the district court incorrectly held that (A)(3) facially discriminates against transgender persons. Read in context, (A)(3) applies to the Director and, at most, classifies based on receipt of a particular medical treatment. *See United States v. Skrmetti*, 605 U.S. 495, 511 (2025).

Third, the district court incorrectly held that (A)(3) burdens Plaintiffs' fundamental rights. In doing so, the court improperly focused on burdens associated with obtaining a court order, even though Plaintiffs did not challenge (A)(4), and the purported burdens it imposes are nothing more or less than the ordinary (and constitutional) components of procedural due

18

process, such as preparing forms, appearing in a tribunal, requesting relief, and, paying a fee (which can be waived). These are processes that all Americans must undergo to get virtually any kind of legal relief in practically any context, including when suspect classifications or fundamental rights are involved. To hold that such processes are traceable to (A)(3) or *facially* violate Plaintiffs' fundamental rights is totally unwarranted on this record and has dire implications.

Fourth, the district court erred in entering its permanent injunction. For one thing, the injunction rewrites Arizona law, contrary to binding precedent. For another, the injunction fails to provide the Director with guidance on how to adhere to its terms, violating Federal Rule of Civil Procedure 65.

Finally, the district court erred in declining to abstain from hearing this case. Although Plaintiffs try to construe (A)(3) as a "Surgical Requirement," their claims boil down to a complaint that their requests for relief under Arizona law were denied by Arizona trial courts. But rather than appealing those decisions through Arizona's courts, Plaintiffs collaterally attacked the constitutionality of the entire process in federal court. In doing so, they deprived the Arizona courts of an opportunity to correctly apply state law

19

and grant them their requested relief. The district court should have abstained from this unnecessary interference with state law. If, contrary to what the undisputed facts and precedent suggest, Plaintiffs are ultimately denied relief in state proceedings, they could raise an as-applied challenge. But in their rush to secure federal relief Plaintiffs have counterproductively prevented Arizona courts from protecting their rights.

## ARGUMENT

### I.  Arizona's birth certificate amendment procedures are facially constitutional.

This is a facial challenge to A.R.S. § 36-337(A)(3) and A.A.C. R9-19-208(O). Plaintiffs originally brought an as-applied challenge but abandoned that challenge during discovery. 4-DirectorER-605 & n.4. A facial challenge is "the most difficult to mount successfully" because the challenger "must establish that no set of circumstances exists under which" the challenged provisions "would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). To prevail, the Director "need only demonstrate that [(A)(3) and 208(O) are] constitutional in some of [their] applications." *United States v. Rahimi*, 602 U.S. 680, 693 (2024).

A correct reading of the challenged provisions' text, undisputed facts, and Arizona case law demonstrate that the challenged provisions are plainly valid in various circumstances.[4]  Plaintiffs' theories do not come close to satisfying the requirements for a facial challenge.

## A. The district court misconstrued the statute's plain text and context.

### 1. The challenged statute and regulation must be read in context, and when they are, Plaintiffs' claims easily fail.

Plaintiffs' claims and the district court's permanent injunction target (A)(3) and 208(O).  4-DirectorER-607–76; 1-DirectorER-004–11, -012–24.  But, of course, "statutory language must always be read in its proper context" and "courts must look to the design of the statute as a whole and to its object and policy."  *California v. Trump*, 963 F.3d 926, 944 (9th Cir. 2020) (citation modified).  Thus, this Court reads the words of a statute "in their context

---

[4] The Director takes no position on whether amending the sex field on Plaintiffs' birth certificates is in fact constitutionally required.  At least one court has concluded otherwise, upholding a statute that prevents *any* mark on the sex field other than a biological sex of male or female as assigned at birth.  *See Gore*, 107 F.4th at 566.  For the sake of this appeal, the Director assumes *arguendo* that Plaintiffs might be able to make claims similar to the instant ones as applied, and only takes issue, on this appeal, with Plaintiffs' facial challenge.  The Director waives no arguments in future as-applied cases.

and with a view to their place in the overall statutory scheme." *Id.*; *see also Stambaugh v. Killian*, 398 P.3d 574, 575 ¶ 7 (Ariz. 2017) ("In construing a specific provision, we look to the statute as a whole . . . .). This and other bedrock approaches to statutory interpretation apply when a statute's constitutionality is challenged just as much as any other time a court interprets a statute. *See, e.g.*, *United States v. Metcalf*, 156 F.4th 871, 880 n.3 (9th Cir. 2025); *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006).

Subsection (A)(3) must be read in the context of the broader statutory scheme and § 36-337(A) as a whole. Surrounding provisions require that the Director "shall prescribe by rule the information required to be submitted to create or amend a vital record" and directs that she "shall amend a registered certificate" pursuant to Arizona vital records statutes and rules adopted pursuant to them. A.R.S. §§ 36-321(A), -323(A).

Facially, § 36-337(A) requires *the Director* to amend a birth certificate upon receipt of "any" of the four categories of documents listed. Subsections (A)(1) and (A)(2) address adoption and paternity, respectively, and so aren't relevant here. Subsection (A)(3) requires the Director to amend a birth certificate when she receives a written physician's verification from "a person who has undergone a sex change operation" or who "has a

22

chromosomal count that establishes the sex of the person as different than in the registered birth certificate." And, then there is (A)(4), which requires the Director to amend a birth certificate when she receives "[a] court order ordering an amendment to a birth certificate." *Id.* § 337(A)(4). Importantly, the plain text of (A)(4) includes no qualifications, no limitations, and no special circumstances.

The Arizona Court of Appeals has confirmed that Arizona's trial courts have broad authority to order amendments to Arizona birth certificates. In *In re Marriage of McLaughlin & Swanson*, the court rejected the trial court's conclusion that it lacked authority to designate two same-sex parents as anything other than "Parent/Parent" on their child's birth certificate. 476 P.3d 336, 337–38 ¶¶ 1–6 (Ariz. Ct. App. 2020). The court held that § 36-337(A)(4) gives the trial court power "to order [the Department] to use whatever terms the court deems appropriate in the circumstances." *Id.* at 338 ¶ 9. The court also reviewed A.A.C. R9-19-208 and concluded that nothing in that regulation "limits the court's discretion in ordering such changes to the field identifiers already used" on the Department's forms. *Id.* at 338–39 ¶ 10. "In sum," the court held, "our legislature has given trial courts general authority to order [the Department] to amend birth

23

certificates." *Id.* at 339 ¶ 13. The court thus vacated and remanded the trial court's orders because the trial court was "erroneous" in concluding it lacked broad authority to amend birth certificates. *Id.* at 340 ¶ 19.

The district court ignored the basic structure and text of the challenged provisions in concluding that they imposed what it called the "Surgical Requirement." *See* 1-DirectorER-005, -021, -029. Read in context, (A)(3) establishes one of four types of evidentiary documents the Director must accept in support of a request to amend a birth certificate. It does not require anyone, other than the Director, to do anything. And there is no basis in the plain text of § 36-337(A) to conclude that (A)(3) is some sort of prerequisite to granting relief under (A)(4). Other than appearing next to each other, those subsections have no relationship—each requires the Director to accept a different type of evidentiary document.

Without looking further, this dooms Plaintiffs' facial claim. Nothing in the plain text of (A)(3) or (A)(4) prevents any person from seeking a court order to amend the sex field on her birth certificate for any reason at all, sex change operation or no sex change operation. *Cf. Roulette v. City of Seattle*, 97 F.3d 300, 306 (9th Cir. 1996) (facial challenge failed where the statute had a plainly valid application).

24

Context also reveals that (A)(3) and 208(O) are not isolated provisions creating a special "private administrative process," as Plaintiffs insist, but rather are akin to all the other means of amending an Arizona birth record. Arizona law outlines several types of requests to amend a birth certificate depending on the circumstances, such as: adoption, *see* § 36-337(A)(1); R9-19-208(M)–(N); paternity, *see* § 36-337(A)(2); R9-19-208(K)–(L); hospital or provider error, *see* R9-19-208(C)–(D); name fields, *id.* (E)–(H); month or day of birth, *id.* (I); date or place of birth, *id.* (J); and, of course, the catch-all court order process, *id.* (B). The Director follows the same administrative process for all these requests. *See id.* R9-19-208(P); R9-19-103. Contrary to Plaintiffs' and the district court's framing, there is no special "private administrative process" that can only be unlocked by "undergo[ing] a sex change operation. *Contrast* 1-DirectorER-005.

### 2. Record evidence shows the challenged provisions have constitutional applications.

Further, it is an undisputed fact that the Director has processed the type of amendment the Plaintiffs seek under § 36-337(A)(4) and R9-19-208(B). 2-DirectorER-088 ¶ 7; 4-DirectorER-713 ¶ 7. This fact also sinks

25

Plaintiffs' facial challenge. *See Roulette*, 97 F.3d at 306 (plaintiffs' concession established that statute had legitimate applications).

Indeed, the Director has been amending the sex field on Arizona birth certificates pursuant to court orders even before *McLaughlin* clarified that Arizona courts have broad authority to order amendments. In a 2017 decision, an Administrative Law Judge held that the Department was required to amend the sex field on a birth certificate upon the issuance of a court order to that effect under subsection (A)(4). *See* 3-DirectorER-422–27. At the time, the Department had taken the position that even if an applicant obtained a court order under (A)(4), she still must also provide a doctor's letter under (A)(3) to amend the sex field on a birth certificate. *See* 3-DirectorER-423–24. The ALJ rejected that view based on the plain language of § 36-337(A) and ordered the Director to amend the birth certificate. 3-DirectorER-426–27. The Director then adopted the ALJ's reasoning as "consistent with applicable law" and "legally correct." 3-DirectorER-428–30. Subsequent to this 2017 decision, the Director has amended the sex field on Arizona birth certificates based on a court order alone, without the need for a doctor's note. 3-DirectorER-351:10–16, -351:21–352:7.

It is an undisputed fact that, applying this policy, the Director *has* assisted transgender individuals in amending their birth certificates under (A)(4) upon receiving a court order, "without requiring proof that the individuals have undergone surgery or have a chromosomal count that establishes the sex of the individuals as different than in the registered birth certificates." 2-DirectorER-088 ¶ 7; 4-DirectorER-713 ¶7. The Department has also amended the sex field on birth certificates to "nonbinary" upon receipt of court orders to that effect, despite that designation not being among the standard options listed. 3-DirectorER-358:2–20; *see* 2-DirectorER-087–88 ¶ 2; 4-DirectorER-550, -553; *cf. McLaughlin*, 476 P.3d at 338 ¶ 9 (trial courts may order the Department "to use whatever terms the court deems appropriate in the circumstances"). In other words, Plaintiffs' so-called "Surgical Requirement" does not exist.

It is true that some lower Arizona courts have declined to order a birth certificate amendment absent a doctor's note attesting to a sex change operation, improperly reading (A)(4) as somehow incorporating the documentation listed in (A)(3), including in the cases of some of the named Plaintiffs. *See* 2-DirectorER-116–17 ¶ 51, 2-DirectorER-119–20 ¶ 60. But such results are inconsistent with the plain text of § 36-337(A), Arizona case law,

27

and administrative rules and practices, and could have been appealed to the Arizona Court of Appeals. *See McLaughlin*, 476 P.3d at 337–38 ¶ 5; A.R.S. § 12-2101(A)(1). But rather than appealing these erroneous decisions to a higher Arizona court, Plaintiffs decided to mount what is effectively a collateral attack by challenging the constitutionality of § 36-337(A)(3) in federal district court.

The district court improperly focused on these examples and "determined that Arizona courts had imported a surgery requirement for transgender individuals to amend their birth certificates under subsection (A)(4)." 1-DirectorER-005. But this is a facial challenge, and there is no basis for that interpretation on the plain text of the statute. Further, record evidence and undisputed facts show, at a minimum, that not all courts import the surgery requirement under (A)(4). That's enough to withstand Plaintiffs' facial challenge. *Cf. Rahimi*, 602 U.S. at 693 (on facial challenge, the government need only demonstrate that the challenged law "is constitutional in some of its applications" and the challenged law was constitutional in the plaintiff's own case). When the district court's faulty textual analysis and incomplete understanding of the record are stripped away, the entire basis of its ruling collapses.

The record also shows that Plaintiffs have conceded that (A)(3) applies to intersex persons as well as transgender persons. Although Plaintiffs argued in response to the Director's Motion for a Stay Pending Appeal that "the very concept of a 'sex change operation' presupposes a body that is unambiguously male or female and is surgically transformed to the other sex," Dkt. 12.1 at 21, they conceded below that an intersex person can undergo "a sex change operation." 2-DirectorER-090.

This accords with the plain and ordinary meaning of "sex change operation," which is not defined in statute. "When terms are not defined within a statute, they are accorded their plain and ordinary meaning, which can be deduced through reference sources such as general usage dictionaries." *California*, 963 F.3d at 944 (citation omitted). "Undergo" means to "experience or be subjected to." Undergo, New Oxford American Dictionary (3rd ed. 2010). A "[s]ex change" is "a change in a person's physical sexual characteristics, typically by surgery and hormone treatment." Sex change, New Oxford American Dictionary (3rd ed. 2010). "Operation" means "an act of surgery performed on a patient." Operation, New Oxford American Dictionary (3rd ed. 2010). Taken together, the plain and ordinary meaning of "a person who has undergone a sex change

29

operation" is someone who has experienced an act of surgery to change their physical sexual characteristics.

The Arizona Court of Appeals has confirmed that (A)(3) does not require "specific surgical procedures to be undertaken." In *Beatie v. Beatie*, the court considered whether the trial court correctly denied a decree of dissolution of a Hawai'i marriage between a transgender man and a cisgender woman. 333 P.3d 754, 755–57 ¶¶ 1–10 (Ariz. Ct. App. 2014). The trial court concluded it lacked subject matter jurisdiction because, at the time, Arizona did not recognize same-sex marriage, and the court believed that the transgender man, Thomas, had not received a "sex change operation" under Arizona law because he had not undergone any gender-affirming surgery besides a chest masculinization surgery and had recently given birth to three children, and therefore was not male under Arizona law. *Id.* at 757 ¶ 11.

In rejecting this conclusion, the Court of Appeals first recognized that Thomas had complied with Hawai'i's birth certificate–amendment statute. *Id.* at 758–59 ¶¶ 20–23. The court then reasoned that because Thomas's birth certificate amendment was valid under Hawai'i law, "that same birth certificate must be recognized by the State of Arizona," because Arizona

30

permits birth certificate amendments for transgender persons under A.R.S. § 36-337(A)(3)'s "more liberal standard," which requires only a doctor's "written statement" and not an "affidavit," as in Hawai'i. *Id.* at 759 ¶ 25. The court then held that § 36-337(A)(3) "does not require specific surgical procedures be undertaken or obligate the applicant to forgo procreation." *Id.* Thus, "interpreting and applying the nearly identical laws of Arizona and Hawaii regarding the issuance of amended birth certificates" to transgender persons, the court held that Arizona law recognized Thomas's marriage and reversed the dismissal of the dissolution proceeding. *Id.* at 760–61 ¶¶ 27–29.

The Director's practices accord with this interpretation. As observed in *Beatie*, (A)(3) "does not require specific surgical procedures be undertaken," *id.* at 759 ¶ 25, so the Director accepts written verification of numerous different procedures under (A)(3), including chest masculinization.[5] *See* 3-DirectorER-305:12–306:1, -325:18–326:13. It follows, then, that any act of surgery to change one's physical sexual characteristics

---

[5] To the extent *Beatie* leaves open what might be considered a "sex change operation" under § 36-337(A)(3), that lack of clarity strongly counsels in favor of federal abstention, as argued below.

31

would be considered a "sex change operation" under Arizona law. Because Plaintiffs effectively have conceded that (A)(3) could be constitutionally applied to a person with an intersex condition such as congenital adrenal hyperplasia, 2-DirectorER-090 ¶ 14, the district court should have rejected their facial challenge. What is more, (A)(3) could certainly be valid as applied to transgender persons who have undergone one or more surgical procedures to change their physical sexual characteristics, such as the transgender man in *Beatie* who underwent some procedures but was still able to reproduce in accordance with his sex assigned at birth. *Cf. Lanier v. City of Woodburn*, 518 F.3d 1147, 1150 (9th Cir. 2008) (rejecting facial challenge where there was at least one constitutional application).

## II. Plaintiffs' facial equal protection challenge fails.

### A. A.R.S. § 36-337(A)(3) does not, on its face, classify on the basis of sex or transgender status, so Plaintiffs' facial equal protection challenge fails.

A facially neutral law violates equal protection principles "only if a discriminatory purpose was a motivating factor for the legislation." *United States v. Carrillo-Lopez*, 68 F.4th 1133, 1139 (9th Cir. 2023).

Section 36-337(A)(3) and its implementing regulation, R-19-208(O) do not classify based on sex or transgender status. They contain no reference to

transgender persons and do not draw distinctions between sexes. The district court acknowledged as much when it concluded that (A)(3) and 208(O) "do not explicitly single out transgender individuals" and that most, but not *all*, individuals who undergo a sex change operation or seek to amend the sex field on their birth certificates are transgender. 1-DirectorER-016 n.6, -020. The challenged provisions are facially neutral.

Facially neutral laws only violate the Equal Protection Clause if "a discriminatory purpose was a motivating factor for the legislation." *Carrillo-Lopez*, 68 F.4th at 1139. The district court correctly found the opposite here. *See* 1-DirectorER-010 (stating that by enacting A.R.S. § 36- 337(A)(3), the legislature intended to offer a remedy for transgender individuals and the law "was not the result of anti-trans bias"); 2-DirectorER-090 ¶ 15.

The lack of facial discrimination or discriminatory purpose alone indicate that Plaintiffs' facial challenge fails. *See Carrillo-Lopez*, 68 F.4th at 1139, 1154 (rejecting equal protection claim because the plaintiff failed to meet his burden to prove that the challenged law was enacted with discriminatory intent); *Valeria v. Davis*, 307 F.3d 1036, 1042 (9th Cir. 2002) (same).

33

**B.    Section 36-337(A)(3) and its implementing regulation, R-9-19-208(O), undisputedly have constitutional applications, dooming Plaintiffs' facial equal protection challenge.**

A facial equal protection challenge fails unless the law violates the Equal Protection Clause in all its applications. *Salerno*, 481 U.S. at 745; *Rahimi*, 602 U.S. at 693.  In reviewing a facial challenge, this Court focuses on the text and context of the statute.  *See Calvary Chapel Bible Fellowship v. County of Riverside*, 948 F.3d 1172, 1177 (9th Cir. 2020); *see also Baird v. Bonta*, 163 F.4th 723, 771 (9th Cir. 2026) (N.R. Smith, J., concurring in part and dissenting in part) ("In a facial challenge, our review of the statutory scheme is limited to the text and context of the statute itself.").

Section 36-337(A)(3) and its implementing regulation, R-9-19-208(O), when read in context, as they must be, *see California*, 963 F.3d at 944, undisputedly have constitutional applications.    Persons who have undergone sex change operations—whether transgender or intersex—can use the (A)(3) process.  This includes persons who have undergone only chest masculinization surgery.  3-DirectorER-326:10–13; *Beatie*, 333 P.3d at 759–60 ¶ 25.  The (A)(3) process is also available to those who have a chromosomal count that does not align with the sex marker on their birth certificate.  A.R.S. § 36-337(A)(3); A.A.C. R9-19-280(O).  And those, like

34

Plaintiffs, who wish to amend the sex field but who have not had any surgical procedures may do so via (A)(4). And multiple persons in that category have done so without needing a doctor's attestation of a sex change operation, per the Director's ongoing policy since 2017. 3-DirectorER-428; 3-DirectorER-351:10–16, -351:21–352:7. That is an undisputed fact. 2-DirectorER-088 ¶ 7; 4-DirectorER-713 ¶ 7.

Because the text, context, and record all undisputedly show that the statute is constitutional in many applications, Plaintiffs' facial equal protection claim fails. *Cf. Rahimi*, 602 U.S. at 693; *Roulette*, 97 F.3d at 306.

### C. Section 36-337(A)(3) is, at most, subject to rational basis review because it is a facially neutral affirmative provision and does not classify on any suspect basis.

This Court need not apply any judicial scrutiny to (A)(3) and 208(O), because they are facially neutral and have constitutional applications, but if the Court chooses to apply any scrutiny, it should apply rational basis. The challenged provisions provide an affirmative benefit alongside others which are equally open to the Plaintiffs, and at most classify based on medical use.

Facially neutral Laws that provide affirmative benefits are subject to rational basis review. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1,

39–40, 44 (1973). Laws that classify based on medical use are also subject to rational basis review. *Skrmetti*, 605 U.S. at 511.

When the statute is read as a whole, as it must be, it is evident that (A)(3) does not impose any requirement on transgender persons or anyone else seeking to amend a birth certificate. Rather, (A)(3) is just one of several bases for the Director to amend a birth certificate. And these options include the court order process of (A)(4), which is available to everyone, including Plaintiffs. Arizona is permitted to offer one specialized avenue for relief among many, and doing so triggers only rational basis review. *Rodriguez*, 411 U.S. at 39–40 ("Of course, every reform that benefits some more than others may be criticized for what it fails to accomplish. But . . . [i]t should be clear . . . that this is not a case in which the challenged state action must be subjected to the searching judicial scrutiny reserved for laws that create suspect classifications or impinge upon constitutionally protected rights.").

The district court nevertheless determined that (A)(3) discriminates on the basis of transgender status because "the vast majority" of non-transgender individuals "have an accurate birth certificate" while "if a transgender individual were unable to satisfy the surgical requirement and obtain an amended birth certificate," then they would be unable to obtain an

accurate identity document. 1-DirectorER-020. But that doesn't make sense because, as explained above, (A)(3) is not the only path to amend the sex marker on an Arizona birth certificate—(A)(4) sits right below it, available to anyone. And (A)(3) does not say anything about non-transgender individuals or otherwise purport to restrict who may amend the sex marker on their birth certificate.

The relevant distinction in (A)(3) is thus not between transgender and non-transgender people, but between people who have "undergone a sex change operation," on the one hand, and people who have not undergone a sex change operation on the other. The category of people who have undergone a sex change operation includes transgender and intersex people. *See* 2-DirectorER-090 ¶ 14. It is undisputed that an intersex person may undergo a surgical procedure to alter their physical sex characteristics and that an intersex person may wish to change the sex marker on their birth certificate. There is no dispute that this would be a constitutional application of (A)(3). Thus, the class contemplated by (A)(3) is not limited to transgender people.

Conversely, the group of people who have not "undergone a sex change operation" includes both transgender and cisgender persons. The

37

salient difference in (A)(3)'s classification is therefore not transgender identity but medical use. *See Skrmetti*, 605 U.S. at 511. That means that rational basis review applies. *Id.*

### D. The State's important and legitimate interest in maintaining the integrity of vital records is rationally related its birth certificate amendment process, so the challenged provisions survive rational basis review.

When a law is subject to rational basis review, it will be upheld so long as it is "rationally related to a legitimate government purpose." *Dent v. Sessions*, 900 F.3d 1075, 1082 (9th Cir. 2018) (citation modified). Under rational basis review, "a statute is presumed constitutional, and the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Id.*

As outlined above, Arizona has long had an interest in creating an accurate and secure system of vital records. The accurate gathering and preservation of these records is necessary for Arizona's gathering of vital health statistics and for sharing that information with the federal government. *See* 2-DirectorER-090–91 ¶¶ 16–17; *see, e.g.*, 4-DirectorER-573–76,-581, -593–95; A.R.S. § 36-324(A), (C); 42 U.S.C. § 242k(a), (g), (h). This

38

interest is undoubtedly both legitimate and important. *See Pavan v. Smith*, 582 U.S. 563, 568 (2017) (Gorsuch, J., dissenting); *Gore*, 107 F.4th at 560–61.

Further, the record in this case reflects that identity theft and fraud, including through the use of fraudulent birth certificates, are significant concerns in Arizona and the nation as a whole. 2-DirectorER-090–92 ¶¶ 16–18. Courts have repeatedly recognized prevention of fraud as a legitimate and important government interest. *See Bowen v. Roy*, 476 U.S. 693, 709 (1986) (recognizing that "preventing fraud" is "an important goal"); *Prete v. Bradbury*, 438 F.3d 949, 969 (9th Cir. 2006) (recognizing a state's "important regulatory interest in preventing fraud and its appearances in its electoral processes"); *Puente Ariz. v. Arpaio*, No. CV-14-01356-PHC-DGC, 2016 WL 6873294 at *23 (D. Ariz. Nov. 22, 2016) (recognizing that identity theft is a "major criminal problem that inflict[s] serious harm on Arizona residents").

The amendment procedures codified at § 36-337 and R9-19-208 are rationally related to these legitimate state interests. By requiring individuals seeking to amend their birth record to submit supporting documentation, Arizona's vital records laws are appropriately tailored to serve the State's significant interests in preserving the integrity and accuracy of birth records and preventing identity theft and other types of fraud.

### E. The challenged provisions also satisfy heightened scrutiny.

Heightened scrutiny is inappropriate here because the challenged provisions are facially neutral, have undisputedly constitutional applications, provide affirmative relief and, at most, classify on the basis of medical use. But even if heightened scrutiny applied, Plaintiffs' facial challenge would fail.

In *Roe v. Critchfield*, a statute facially classified on the basis of sex as well as transgender status, triggering heightened scrutiny upon the plaintiffs' facial challenge. *See* 137 F.4th 912, 919–20, 922–23 (9th Cir. 2025). This Court first asked whether there was an important state interest. *Id.* at 923–24. Next, because the *Critchfield* plaintiffs made a facial challenge they would lose if "any" of the challenged provisions' applications "survive[d] intermediate scrutiny." *Id.* at 924–25 (citing *Salerno*, 481 U.S. at 745). This Court concluded that in at least some applications, a *facially discriminatory* policy regarding school bathroom use survived this form of heightened review because the privacy interest in protecting children from unclothed bodies of the opposite sex was substantially related to the challenged law. *Id.*

40

Assuming such scrutiny were appropriate, the same analysis would apply here. The state's important interests in preserving accurate and reliable records and preventing fraud and identity theft are undoubtedly important. *See Pavan*, 582 U.S. at 568 (Gorsuch, J., dissenting); *Gore*, 107 F.4th at 560–61. Further, they are substantially related to the amendment process of § 36-337(A) and R9-19-208, which systematizes a process for amending birth certificates in a reliable and orderly fashion and requires the Director to accept certain evidentiary documents in support of amendment requests. Applying these same standards to all Arizonans, whether they are transgender or not, serves the important interest of ensuring reliable vital records and preventing fraud. *Cf. Critchfield*, 137 F.4th at 924–25.

## III. Plaintiffs' facial due process challenges fail.

Plaintiffs allege that their substantive due process rights of privacy, personal autonomy, and whether to undergo a medical procedure are burdened by the challenged provisions. 4-DirectorER-670–74. The Director takes no position on these rights' contours or whether or how they attach here, as these questions remain open. *See, e.g.*, *Critchfield*, 137 F.4th at 931 ("We have not yet addressed whether an individual's transgender status is the type of information protected by" the right to privacy); *see also Curtis v.*

41

*Inslee*, 154 F.4th 678, 691 (9th Cir. 2025) ("Courts are reluctant to expand the concept of substantive due process." (citation modified)). The Director simply maintains that, assuming these rights do, as a general matter, protect Plaintiffs in the manner they assert, Plaintiffs' facial claims still fail.

The district court was able to conclude otherwise only by confounding Plaintiffs' facial challenge of (A)(3) and 208(O) with an as-applied challenge to specific applications of the (A)(4) and 208(B) court order process. But even if the application of (A)(4) is considered, Arizona's birth certificate amendment process burdens no fundamental rights.

## A. Arizona's birth certificate amendment process facially burdens no fundamental right and plainly has constitutional applications.

Facial due process challenges, like all facial challenges, can only succeed if a plaintiff shows that the challenged law is unconstitutional in all its applications. *See Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 780 (9th Cir. 2014). Thus, this Court need only look to the text and context of the statute itself, leaving consideration of the statute's application "for another day." *Calvary Chapel Bible Fellowship*, 948 F.3d at 1177; *see also Baird*, 163 F.3d at 771 (N.R. Smith, J., concurring in part and dissenting in part) ("In a facial

challenge, our review of the statutory scheme is limited to the text and context of the statute itself.").

On their face, (A)(3) and 208(O) impose no burden on any fundamental right. They merely provide one avenue of birth certificate amendment among several others, including the court process of (A)(4) and 208(B). *See generally* A.R.S. § 36-337(A); A.A.C. R9-19-208. They do not force Plaintiffs to disclose anything, or undergo any medical procedure, or define or express their identity as other than they wish—they require the *Director* to amend a birth certificate under specified circumstances. A.R.S. § 36-337(A); A.A.C. R9-19-208.

And, as outlined above, these amendment procedures have plainly constitutional applications: for persons who have undergone sex change operations, including intersex people; for people whose chromosomal count does not match the sex field on their birth certificate; and, under (A)(4), any other person who wishes to amend the sex field on the birth certificate using the court order process. Undisputedly, the Director has followed this statutory scheme to amend the sex field on birth certificates without requiring a doctor's attestation of having undergone a sex change operation. 2-DirectorER-088 ¶ 7; 4-DirectorER-713 ¶ 7; 3-DirectorER-428–30; 3-

43

DirectorER-351:10–16, -351:21–352:7.  Plaintiffs cannot meet their burden on a facial challenge.

**B. The challenged provisions are simply an affirmative avenue of relief offered alongside others and do not *require* Plaintiffs to do anything, so only rational basis applies.**

The Due Process Clause of the Fourteenth Amendment "is phrased as a limitation on the State's power to act."  *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989).  It thus "cannot fairly be extended to impose an affirmative obligation on the State" to ensure that the interests of life, liberty, and property "do not come to harm through other means."  *Id.*  There accordingly is "no affirmative right to governmental aid" and states are not required to extend services beyond what has been established through the political process.  *Id.* at 196, 203.  So when an affirmative benefit is challenged under the Due Process Clause, it is subject to rational basis review.  *See id.*; *Rodriguez*, 411 U.S. at 39–40.

Subsections (A)(3) and 208(O) do not force anyone to undergo any medical procedure—they require the Director to amend the birth certificate of someone who does.  The challenged provisions are simply one affirmative avenue for relief, and heightened scrutiny under the Due Process Clause is not implicated.  *See DeShaney*, 489 U.S. at 196; *Rodriguez*, 411 U.S. at 39–40.

44

Likewise, Arizona's "amendment policy does not disclose [Plaintiffs'] transgender status." *Gore*, 107 F.4th at 563. The Director seals the pre-amendment birth certificate and evidentiary documents submitted for the amendment process. *See* A.R.S. § 36-337(G); A.A.C. R9-19-208(R). The types of disclosures they complain of—related to obtaining other forms of government identification, receiving benefits, participating in school programs, and the like, *see* 2-DirectorER-128–30 ¶¶ 17–24—are not caused by the challenged provisions or any party to this case.[6] The Due Process Clause is accordingly not implicated, and rational basis applies. *See DeShaney*, 489 U.S. at 196 (observing that the purpose of the Due Process Clause "was to protect the people from the State, not to ensure that the State protected them from each other"); *Gore*, 107 F.4th at 563 ("No Supreme Court case remotely holds that the States may not stand by their birth certificate policies and may not preserve the historical fact of the biological sex of each birth in the State.").

---

[6] Plaintiffs' concerns with (A)(4), which is not one of the challenged provisions, are addressed below.

45

### C. The district court confused Plaintiffs' facial challenge to (A)(3) with an as-applied challenge to (A)(4).

The district court's order and the plaintiffs' argument as to burdens center on (A)(4), because they assert that (A)(3) puts transgender people in the position of having to either (a) undergo a possibly unwanted or unneeded sex change operation, or (b) to go through the (A)(4) court process.

But Plaintiffs did not challenge (A)(4), so whatever burdens that process imposes are irrelevant. 4-DirectorER-607–76. Further, whatever burdens might arise under (A)(4) would depend heavily on each case—whether the judicial officer allowed the amendment-seeker to seal the record, whether she incorrectly read the requirements of (A)(3) into (A)(4)—and thus whatever burdens might exist under (A)(4), they are not appropriate for this facial challenge to (A)(3).

But even if the (A)(4) process is considered, it does not burden any fundamental rights.

### D. Section 36-337(A)(4)'s court order process does not burden any fundamental rights.

For heightened scrutiny to apply, a law must burden a fundamental right. *Skrmetti*, 605 U.S. at 510. The process of obtaining a court order and submitting it to the Director under (A)(4) and 208(B) does not impose any

46

unconstitutional burdens, so rational basis applies. *See Lyng v. Int'l Union*, 485 U.S. 360, 370 (1988) ("Because the statute challenged here has no substantial impact on any fundamental interest . . . we confine our consideration to whether the statutory classification is rationally related to a legitimate governmental interest." (citation modified)).

Plaintiffs generally take issue with the onerousness of what they call a "litigation" process and its associated costs and headaches, like filling out forms, paying fees, attending hearings, and potentially paying attorneys. This might seem plausible enough—anyone with any familiarity with court processes knows they can be difficult, time consuming, and costly. But there are two fatal flaws with this framing.

First, it is undermined by the record, which shows that petitioning a court for a birth certificate amendment is not akin to "suing the government" and going through a lengthy litigation process. *Contrast* 1-DirectorER-014 n.3, 1-DirectorER-019 n.9. Rather, the process involves submitting forms and attending a hearing. *See* 2-DirectorER-139–67. Of course, one might choose to hire an attorney to assist with this process, just as one might hire an attorney to defend against a parking citation or prepare a will. But it is by no means required, as Plaintiffs' own representations attest. *See* 2-

DirectorER-134 ¶ 48 (stating that "many applicants hire attorneys" to navigate the (A)(4) process). And fees can be waived based on need. 2-DirectorER-163.

Second, and more fundamentally: The burdens Plaintiffs complain of literally are the burdens inherent in any legal or administrative process (including the instant case). Such burdens apply in all cases, including ones that deal with sensitive issues or fundamental rights. For example, classifications related paternity and legitimacy have long been subject to heightened scrutiny. *See Clark v. Jeter*, 486 U.S. 456, 461 (1988). But such matters, by their very nature, routinely end up in litigation with all its inherent burdens. *See, e.g.*, *In re L.P.*, 569 P.3d 411 (Ariz. Ct. App. 2025); *In re G.R.*, 532 P.3d 1180 (Ariz. Ct. App. 2023).

The Director admits that seeking a court order might be slower, costlier, and less convenient than Plaintiffs would like. But it's the same process that applies to all Arizonans seeking to amend a birth certificate and it's the same basic legal process that inheres in a system that follows the rule of law and (ironically) due process. Holding that such burdens constitute a violation of the Due Process Clause would work a strange inversion on our legal system.

Plaintiffs also complain specifically about the fact that seeking a court order would, absent an order to seal, create a public record, potentially outing them and invading their privacy. There are two fatal flaws to this idea.

First, Arizona courts can and do seal records. *See* Ariz. R. Civ. P. 5.4. And Arizona courts, like federal courts, anonymize minors' names as a matter of course. *See, e.g.*, *In re L.P.*, 569 P.3d 411; *In re G.R.*, 532 P.3d 1180. And when the Director amends a birth certificate, she is required to seal the registered birth record that existed before the amendment and the evidentiary documents submitted in support of the amendment. A.R.S. § 36-337(G); A.A.C. R9-19-208(R). On a facial challenge, these considerations are enough to defeat the invasion of privacy claim. (At risk of repetition, if a plaintiff's motion to seal were not granted, that might help form the basis of an as-applied challenge.)

Second, our rule-of-law system and open society create public records about all kinds of things, particularly when someone seeks relief from a court (as here). These benefits and burdens apply to all Arizonans seeking to amend their birth certificates. And when the government extends benefits in this manner substantive due process is not implicated and rational basis

49

review applies. *See DeShaney*, 489 U.S. at 196 ("[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual.").

The Director sympathizes with those Plaintiffs who would not like to have to out themselves, but there is simply no support in the law for the idea that in seeking to vindicate one's rights one is guaranteed privacy. Indeed, courts strongly favor keeping their records open to the public to protect First Amendment interests and the rule of law. *See Civil Beat Law Ctr. for Pub. Interest, Inc. v. Maile*, 117 F.4th 1200, 1208 (9th Cir. 2024) ("[W]e have concluded that the presumptive First Amendment right of public access attaches broadly to criminal and civil proceedings."); *Phx. Newspapers, Inc. v. Super. Ct. of Maricopa Cnty.*, 680 P.2d 166, 171 (Ariz. Ct. App. 1983) (recognizing need to balance trial court's "presumption that information received by it is to be open to the public").

Plaintiffs' theory insinuates that requiring someone to undergo a standard court process unconstitutionally burdens them. Accepting that theory would have profoundly negative consequences.

**E.  Because no fundamental rights are burdened, rational basis applies to Plaintiffs' substantive due process claims, and the challenged provisions easily survive.**

Because Plaintiffs' facial challenge fails to show that the provisions burden any fundamental right, rational basis applies. *See Skrmetti*, 605 U.S. at 510. "Rational basis review is a paradigm of judicial restraint" and is "highly deferential to the government." *Raidoo v. Moylan*, 75 F.4th 1115, 1121 (9th Cir. 2023) (citation modified). Courts uphold statutes under rational basis review so long as "the government has a legitimate interest in enacting the statute, and the law is rationally related to that interest." *Id.*

Here, the challenged provisions easily survive rational basis review, for reasons outlined above. The State has a legitimate and important interest in protecting the integrity of its vital records and preventing fraud. And § 36-337(A) and R9-19-208 are rationally related to that goal because they ensure that vital records are amended in an orderly and reliable manner. *See supra* Section II.D.

**IV.  The district court improperly rewrote the statute and created an unworkable new regime.**

After entering summary judgment, the district court accepted Plaintiffs' invitation to "strike" the word "operation" from § 36-337(A)(3) and R9-19-208(O). 1-DirectorER-010–11. Thus, the district court purported

51

to rewrite subsection (A)(3) to read that the Director shall amend a birth certificate for a person "who has undergone a sex change" and provides a "written statement by a physician that verifies the sex change."[7]

The first major problem with this approach is that a court cannot rewrite a statute. *Ayotte v. Planned Parenthood*, 546 U.S. 320, 329 (2006). "[O]nly legislatures ought to make positive law." *Vivid Entmt., LLC v. Fielding*, 774 F.3d 566, 573 (9th Cir. 2014). Although people often speak of a court "invalidating" or "striking" a statute, these terms are merely "common judicial shorthand when the Court holds that a particular provision is unlawful and therefore may not be enforced against a plaintiff." *Barr v. Am. Ass'n of Political Consultants, Inc.*, 591 U.S. 610, 627 n.8 (2020). The law has not really been "stricken" and remains on the books, *id.*, because "federal courts cannot repeal state laws." *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 521 (7th Cir. 2021); *see also* John Harrison, *Severability, Remedies, and Constitutional Adjudication*, 83 Geo. Wash. L. Rev. 56, 81–82 (2014) ("Courts neither have nor need the power to make statutes inoperative by granting a

---

[7] The court's purported re-write of R9-19-208(O) mirrors the change to (A)(3) by removing the word "operation" and leaving only "sex change."

remedy of complete or partial invalidation. . . . Invalidation by courts is a figure of speech.").

The district court's injunction violates this principle by purporting to alter the meaning of § 36-337(A)(3) by removing a word, that is, by literally amending its text. *See* 1-DirectorER-010–11. The court correctly wished to "avoid nullifying an entire statute when only a portion is invalid." *Vivid Entmt.*, 774 F.3d at 573; *see* 1-DirectorER-009. But that concern suggests one of two approaches: first, to construe the statute to avoid constitutional difficulties, or second, to sever the offending provision from the remainder of the statute.

As noted elsewhere, the court should have interpreted the statute as "not requiring any particular surgical procedure," in accordance with the holdings of Arizona state courts. *See Beatie*, 333 P.3d at 759–60 ¶ 25. And the district court had undisputed facts in the record, plus Arizona case law, to conclude that (A)(4) could grant Plaintiffs relief without any surgical requirement. *See* 2-DirectorER-088 ¶ 7; 4-DirectorER-713 ¶ 7; *McLaughlin*, 476 P.3d at 339 ¶ 13.

Under this Court's precedent, the district court was "obligated to follow the decisions of the state's intermediate courts" unless there is "convincing evidence that the highest court of the state would decide differently." *In re Kirkland*, 915 F.2d 1236, 1239 (9th Cir. 1990). This respect for state law, and the caution it entails, applies with full force when a federal court reviews a state statute for compliance with the federal Constitution. *See Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 75 (1997); *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 939 (9th Cir. 1997).

Given binding and on-point state law that could resolve this question, plus undisputed record facts, the district court could easily have interpreted § 36-337(A)(3) to avoid the alleged constitutional problems. *See, e.g.*, *Metcalf*, 156 F.4th at 881–82. The district court had no need to resort to statutory amendment by way of permanent injunction in the first place.

Second, although it is appropriate for a court to enjoin as little of a statute as possible, *e.g. Vivid Entmt.*, 774 F.3d at 573, this means "severing a provision." *Barr*, 591 U.S. at 628. Neither the district court nor Plaintiffs offered a single legal authority suggesting that a court could "enjoin" a word in the middle of a provision. Doing so amounts to simply rewriting the statute rather than enjoining some aspect of its enforcement. Ironically, in

attempting to interfere as little as possible, the district court strayed from the judicial to the legislative role, rendering the permanent injunction improper.

Further, if the district court's injunction is allowed to stand, the Director is left in a state of confusion. Under the statute as judicially rewritten, (A)(3) can be invoked based on a "sex change" rather than a "sex change operation." But what exactly is the difference? The district court leaves that decision in what it calls "the appropriate hands: patients and their treating physicians." 1-DirectorER-010. Thus, rather than stating its terms "specifically" and describing "the acts restrained or required" in "reasonable detail," the district court effectively amended the statute and then left the ultimate meaning of the newly worded statute in the hands of patients and physicians. Fed. R. Civ. P. 65(d)(1). This violates Rule 65 and exceeds the proper rule of the judiciary.

Moreover, the court failed to specify the language the Director is required to accept in a physician's statement "verifying the sex change." In its order on summary judgment, the court observed "it would not be a herculean effort" for the Director to accept physician's letters "attesting the applicant is receiving the 'appropriate clinical treatment' to transition or is 'irrevocably committed' to transitioning." 1-DirectorER-024 n.11. But under

55

the court's permanent injunction order, it is not clear if the court expects the Director to accept such letters. Given such vagueness, the injunction does not satisfy Rule 65.

Even if this Court accepts Plaintiffs' arguments on the merits of any of their claims, it should vacate the district court's permanent injunction order and remand for the district court to craft a remedy that accords with the role of the judiciary and federal rules.

## V. The district court should have abstained from the Plaintiffs' collateral attack on unfavorable state court rulings under *Railroad Commission of Texas v. Pullman.*

In truth, this case should never have reached the merits stage, much less final judgment or an appeal to this Court. Fundamentally, the named Plaintiffs complain that Arizona's birth certificate amendment procedures did not work for them because some Arizona judicial officers improperly imported the documentation authorized by (A)(3) into the (A)(4) process, denying Plaintiffs' requested relief. But in doing so, those judicial officers misread (A)(3) and (A)(4). Plaintiffs thus could have appealed the adverse rulings to higher Arizona courts, who could and likely would grant Plaintiffs their requests for relief. *See McLaughlin*, 476 P.3d at 339 ¶ 13, 340 ¶ 19; *Beatie*, 333 P.3d at 759 ¶ 25. But instead of doing that, Plaintiffs effectively mounted

a collateral attack on their unappealed Arizona cases in federal court. As an alternative way to resolve this case, this Court should rule that *Pullman* abstention applies so that Arizona courts can resolve this issue of Arizona law.[8]

*Pullman* abstention, named for *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941), applies when three conditions are satisfied: "(1) the federal plaintiff's complaint requires resolution of a sensitive question of federal constitutional law; (2) the constitutional question could be mooted or narrowed by a definitive ruling on the state law issues; and (3) the possibly determinative issue of state law is unclear." *Portrero Hills Landfill, Inc. v. County of Solano*, 657 F.3d 876, 888 (9th Cir. 2011). *Pullman* abstention decisions are reviewed under a modified abuse of discretion standard: the Court reviews whether the requirements for *Pullman* abstention have been met de novo, and the district court's ultimate abstention decision for abuse of discretion. *Smelt v. County of Orange*, 447 F.3d 673, 678 (9th Cir. 2006).

---

[8] The district court rejected the Director's abstention arguments in its ruling on the Director's motion to dismiss. *See* 1-DirectorER-047–48.

57

The prerequisites for *Pullman* abstention are easily met here. First, Plaintiffs' claims require resolution of sensitive issues of federal constitutional law. Plaintiffs' claims touch on unresolved issues of equal protection and substantive due process that are currently in various stages of appeal in courts across the country or have resulted in rulings that are in tension with the district court's decisions here. *See, e.g.*, *West Virginia v. B.P.J.*, U.S. S. Ct. No. 24-43 (argued Jan. 13, 2026); *Gore v. Lee*, 107 F.4th 548 (6th Cir. 2024); *Hecox v. Little*, 104 F.4th 1061 (9th Cir. 2024), *cert. granted*, 145 S. Ct. 2871 (2025).

Second, these questions could easily be mooted by a decision of state law. As discussed, the Arizona trial and administrative courts have undisputedly granted court orders for sex field amendments in the absence of physician's notes attesting to a sex change operation via subsection (A)(4). And, undisputedly, the Director has honored those court orders. These facts fatally undermine the district court's core premise that § 36-337(A) forces transgender persons to either involuntarily disclose their transgender status or undergo surgery. 1-DirectorER-005. Granted, before this litigation commenced, some trial courts read the sex change operation requirement into the court order requirement. It is plausible that a court could do so

58

again. If that were the case, this issue could be resolved by Arizona's Court of Appeals or Supreme Court, mooting this issue. The second condition for *Pullman* abstention is thus met.

Third, the issue of state law is unclear. As the Director identifies above, state law strongly suggests that Arizona law already operates to satisfy Plaintiffs' requests for relief. But the Arizona Supreme Court has never had occasion to rule on the issue, nor have Arizona courts subsequent to *Beatie* been presented with questions regarding the scope of § 36-337(A)(3). *See McLaughlin*, 476 P.3d 336; *Beatie*, 333 P.3d 754.

This is a strong case for *Pullman* abstention. Not only *might* the state courts be able to moot these issues, but existing precedent, administrative practice, and a logical reading of § 36-337(A) strongly indicate that these issues *would* be mooted under state law. *Cf. Smelt*, 447 F.3d at 679–82 (upholding *Pullman* abstention when same-sex marriage issues could be addressed by California courts); *Burdick v. Takushi*, 846 F.2d 587, 588–89 (9th Cir. 1988) (vacating and remanding with instructions to abstain when all three *Pullman* conditions were met); *contrast Portrero Hills Landfill*, 657 F.3d at 889–90 (declining *Pullman* abstention when there was "no apparent saving construction on the face of the state law" (citation modified)).

59

This case never should have made it this far. The district court therefore abused its discretion in failing to abstain. As an alternative to a ruling that Plaintiffs' facial challenge fails, this Court should vacate and remand with instructions to abstain on *Pullman* grounds.[9]

## CONCLUSION

This Court should reverse and vacate the district court's judgment and remand for entry of judgment in favor of the Director.

---

[9] The Court could, in the alternative, remand with instructions to certify the question of § 36-337(A)'s proper application to the Arizona Supreme Court. *See Portrero Hills Landfill*, 657 F.3d at 889. The district court seems not to have considered the possibility of certifying the question to the Arizona Supreme Court when it summarily rejected the Director's abstention arguments. *See* 1-DirectorER-047–48.

Respectfully submitted this 13th day of February, 2026.

KRISTIN K. MAYES
  ARIZONA ATTORNEY GENERAL

By /s/  *Nathan Arrowsmith*
Nathan Arrowsmith
Lauren Watford
Timothy Horney
OFFICE OF THE ARIZONA
  ATTORNEY GENERAL
2005 N. Central Ave.
Phoenix, AZ 85004
(602) 542-3333

*Counsel for Appellant Deborah Johnston*

# ADDENDUM

## ADDENDUM TABLE OF CONTENTS

| Description | Page |
|---|---|
| Arizona Revised Statutes Section 37-337 | 64 |
| Arizona Administrative Code R9-19-208 | 68 |

## § 36-337. Amending birth certificates

**A.** The state registrar shall amend the birth certificate for a person born in this state when the state registrar receives any of the following:

1. Except as provided in subsection D of this section, an adoption certificate or a court order for adoption required pursuant to § 36-336.

2. A voluntary acknowledgment of paternity pursuant to § 25-812.

3. For a person who has undergone a sex change operation or has a chromosomal count that establishes the sex of the person as different than in the registered birth certificate, both of the following:

(a) A written request for an amended birth certificate from the person or, if the person is a child, from the child's parent or legal guardian.

(b) A written statement by a physician that verifies the sex change operation or chromosomal count.

4. A court order ordering an amendment to a birth certificate.

**B.** The state registrar shall change the name of the father on a registered birth certificate if:

1. The state registrar receives an administrative order or a court order ordering the state registrar to change the father's name on the registered birth certificate.

2. Paternity is established through a voluntary acknowledgement of paternity pursuant to § 25-812.

**C.** If a registered birth certificate does not exist for a person born in this state who is requesting to amend a birth certificate the person making that request shall comply with the requirements established by rule.

**D.** The state registrar shall retain the information on a person's registered birth certificate after the person's adoption if all of the following documents are submitted to the state registrar:

1. A written request to retain the information signed by the adoptive parent or a court order containing a request to retain the information on the registered birth certificate.

2. A written statement agreeing to retain the mother's name on the person's registered birth certificate, signed by the mother, or if the mother is deceased, a certified copy of a registered death certificate for the mother.

3. If there is a father's name stated on the registered birth certificate, a written statement agreeing to retain the father's name on the person's registered birth certificate, signed by the father, or if the father is deceased, a certified copy of a registered death certificate for the father.

**E.** If the state registrar amends a registered birth certificate following adoption, the birth certificate shall state the city or county of birth stated on the existing registered birth certificate and the date of birth stated on the existing registered birth certificate. The state registrar may omit the exact location of birth on the registered birth certificate.

**F.** If a local registrar or deputy local registrar amends a registered birth certificate, the local registrar or deputy local registrar shall forward all evidentiary documents provided to create the new birth certificate to the state registrar.

**G.** If the state registrar amends a registered birth certificate, the state registrar shall seal the previously registered birth certificate and the evidentiary documents provided to amend the registered birth certificate. The state registrar shall provide access to a sealed certificate or evidentiary documents only pursuant to § 36-322 or 36-340 or a court order issued in this state or as prescribed by rule.

**H.** If the state registrar receives a court order annulling an adoption, the state registrar shall unseal the sealed registered birth certificate and shall seal the new birth certificate and evidentiary documents.

**R9-19-208. Amending Information in a Registered Birth Record**

**A.** A person requesting an amendment to an individual's registered birth record shall include in a written request to amend:

1. The individual's name currently in the individual's registered birth record;

2. The individual's date of birth;

3. The name before first marriage of the individual's mother;

4. If known, the:

a. Individual's sex;

b. State file number;

c. Town or city of the individual's birth;

d. County of the individual's birth;

e. Hospital where the individual was born, if applicable;

f. Name of the individual's father; and

g. Dates of birth of the individual's parents; and

5. The specific information in the individual's registered birth record to be amended, including, as applicable or as further specified in subsections of this Section, the specific information to be deleted and the specific information to be added.

**B.** Except for an amendment specified in another subsection of this Section, to request an amendment to an individual's registered birth record, a person requesting the amendment shall submit to the State Registrar:

    1. A written request, in a Department-provided format, that includes:

        a. The information in subsection (A);

        b. The name and mailing address of the person requesting the amendment;

        c. The relationship between the individual and the person requesting the amendment; and

        d. An affidavit attesting to the validity of the submitted amendment, signed by the person requesting the amendment;

    2. A copy of a court order to amend the individual's registered birth record, certified by the issuing court and including the information to be amended, as specified according to subsection (A)(5);

    3. If the person submitting the request for the amendment to the individual's registered birth record is the individual's guardian, a copy of the court order establishing guardianship, certified by the issuing court; and

69

4. The fee in R9-19-105 for a request to amend information in a registered birth record.

**C.** An administrator of a hospital or the person in charge of the medical records for the hospital where an individual was born, who is requesting an amendment of information specified in R9-19-201(A)(3) or (4) in the individual's registered birth record because of a hospital error, shall submit to the State Registrar or a local registrar:

1. A written request, in a Department-provided format, that includes:

a. The information in subsection (A);

b. The name of the hospital administrator or the person in charge of the hospital's medical records who is requesting the amendment; and

c. A written statement attesting to the validity of the submitted amendment, signed and dated by the hospital administrator or the person in charge of the hospital's medical records; and

2. A copy of the part of the individual's or the individual's mother's medical record containing the specific information to be amended.

**D.** A physician, registered nurse practitioner, nurse midwife, or midwife who attended an individual's birth, submitted a request for the individual's

70

birth registration according to R9-19-203, and requests an amendment of information specified in R9-19-201(A)(3) or (4) in the individual's registered birth record because of the physician's, registered nurse practitioner's, nurse midwife's, or midwife's error shall submit to the State Registrar or a local registrar:

    1. A written request, in a Department-provided format, that includes:

        a. The information in subsection (A);

        b. The name of the physician, registered nurse practitioner, nurse midwife, or midwife who attended an individual's birth; and

        c. A written statement attesting to the validity of the submitted amendment, signed and dated by the physician, registered nurse practitioner, nurse midwife, or midwife who attended the individual's birth; and

    2. A copy of the part of the individual's or the individual's mother's medical record containing the specific information to be amended.

**E.** To add an individual's first name, middle name, or suffix to the individual's registered birth record 90 days or less after the individual's birth, the individual's parent or guardian shall submit to the State Registrar or a local registrar:

1. A written request, in a Department-provided format, that includes:

a. The information in subsection (A), including the first name, middle name, or suffix to be added;

b. The name and mailing address of the individual's parent or guardian requesting the amendment; and

c. An affidavit attesting to the validity of the submitted amendment, signed, as applicable, by:

i. Each parent whose name is included in the individual's birth record, or

ii. The individual's guardian;

2. If the person submitting the request for the amendment to the individual's registered birth record is the individual's guardian, a copy of the court order establishing guardianship, certified by the issuing court; and

3. The fee in R9-19-105 for a request to amend information in a registered birth record.

**F.** To add an individual's first name, middle name, or suffix to the individual's registered birth record more than 90 days but less than seven

years after the individual's birth, the individual's parent or guardian shall submit to the State Registrar or a local registrar:

1. A written request, in a Department-provided format, that includes:

a. The information in subsection (A), including the first name, middle name, or suffix to be added;

b. The name and mailing address of the individual's parent or guardian requesting the amendment; and

c. An affidavit attesting to the validity of the submitted amendment, signed, as applicable, by:

i. Each parent whose name is included in the individual's birth record, or

ii. The individual's guardian;

2. An evidentiary document that:

a. Includes the first name, middle name, or suffix to be added; and

b. Was created within one year after the date of the individual's birth;

3. If the person submitting the request for the amendment to the individual's registered birth record is the individual's guardian, a copy

of the court order establishing guardianship, certified by the issuing court; and

4. The fee in R9-19-105 for a request to amend information in a registered birth record.

**G.** To request the amendment of an individual's name in the individual's registered birth record 90 days or less after the individual's birth, the individual's parent or guardian shall submit to the State Registrar or a local registrar:

1. A written request, in a Department-provided format, that includes:

a. The information in subsection (A), including the specific name to be deleted and the specific name to be added;

b. The name and mailing address of the individual's parent or guardian requesting the amendment; and

c. An affidavit attesting to the validity of the submitted amendment, signed, as applicable, by:

i. Each parent whose name is included in the individual's birth record, or

ii. The individual's guardian;

74

2. If the person submitting the request for the amendment to the individual's registered birth record is the individual's guardian, a copy of the court order establishing guardianship, certified by the issuing court; and

3. The fee in R9-19-105 for a request to amend information in a registered birth record.

**H.** To request the amendment of an individual's name in the individual's registered birth record more than 90 days but less than one year after the individual's birth, the individual's parent or guardian shall submit to the State Registrar or a local registrar:

1. A written request, in a Department-provided format, that includes:

a. The information in subsection (A), including the specific name to be deleted and the specific name to be added;

b. The name and mailing address of the individual's parent or guardian requesting the amendment; and

c. An affidavit attesting to the validity of the submitted amendment, signed, as applicable, by:

i. Each parent whose name is included in the individual's birth record, or

75

        ii. The individual's guardian;

    2. An evidentiary document that:

        a. Includes the name to be added, and

        b. Was created within one year after the date of the individual's birth;

    3. If the person submitting the request for the amendment to the individual's registered birth record is the individual's guardian, a copy of the court order establishing guardianship, certified by the issuing court; and

    4. The fee in R9-19-105 for a request to amend information in a registered birth record.

**I.** To amend the month or day of an individual's birth in the individual's registered birth record, the individual, if the individual is of legal age or is married, or the individual's parent or guardian shall submit to the State Registrar or a local registrar:

    1. A written request, in a Department-provided format, that includes:

        a. The information in subsection (A), including the month or day to be deleted and the month or day to be added;

76

b. The name and mailing address of the individual or the individual's parent or guardian requesting the amendment; and

c. An affidavit attesting to the validity of the submitted amendment, signed, as applicable, by:

i. The individual;

ii. The individual's parent requesting the amendment, whose name is included in the individual's birth record; or

iii. The individual's guardian;

2. An evidentiary document that includes the requested month or day;

3. If the person submitting the request for the amendment to the individual's registered birth record is the individual's guardian, a copy of the court order establishing guardianship, certified by the issuing court; and

4. The fee in R9-19-105 for a request to amend information in a registered birth record.

**J.** To amend the date of birth or place of birth of an individual's parent in the individual's registered birth record, to change the individual's mother's last name in the individual's registered birth record to the individual's mother's last name before the individual's mother's first marriage, or to change the

77

last name of the individual's father in the individual's registered birth record, the individual, if the individual is of legal age or is married, or the individual's parent or guardian shall submit to the State Registrar or a local registrar:

1. A written request, in a Department-provided format, that includes:

a. The information in subsection (A), including the specific information in the individual's registered birth record to be amended, including the date of birth, place of birth, or name to be deleted and the date of birth, place of birth, or name to be added;

b. The name and mailing address of the individual or the individual's parent or guardian requesting the amendment; and

c. An affidavit attesting to the validity of the submitted amendment, signed, as applicable, by:

i. The individual;

ii. The individual's parent requesting the amendment, whose name is included in the individual's birth record; or

iii. The individual's guardian;

78

2. One of the following evidentiary documents containing the specific information for the individual's parent to be amended in the individual's registered birth record:

    a. A certified copy of the individual's parent's registered birth certificate;

    b. A copy of the individual's parent's passport; or

    c. A copy of an administrative order or court order establishing paternity, certified by the issuing entity;

3. If the person submitting the request for the amendment to the individual's registered birth record is the individual's guardian, a copy of the court order establishing guardianship, certified by the issuing court; and

4. The fee in R9-19-105 for a request to amend information in a registered birth record.

**K.** To request the amendment of an individual's registered birth record based on the individual's biological father's voluntary acknowledgement of paternity, the individual's mother and biological father shall submit to the State Registrar:

1. A voluntary acknowledgement of paternity form that complies with A.R.S. § 25-812;

2. The following information, which may be submitted as part of the voluntary acknowledgement of paternity or in a Department-provided format:

   a. The information in subsection (A);

   b. The names and mailing address of the individual's mother and biological father requesting the amendment;

   c. The following information about the individual's biological father:

      i. Name;

      ii. Date of birth;

      iii. State, territory, or foreign country where the individual's biological father was born;

      iv. Social Security Number;

      v. Race;

      vi. Whether the individual's father is of Hispanic origin and, if so, the type of Hispanic origin; and

vii. Highest degree or level of education completed by the individual's father at the time of the individual's birth;

d. If the request is submitted 90 days or less after the date of the individual's birth, the name requested for the individual; and

e. If the request is submitted more than 90 days after the date of the individual's birth, the last name requested for the individual;

3. If an individual has a presumed father as described in A.R.S. § 25-814(A)(1), a written document that contains:

a. The individual's name;

b. The individual's presumed father's name;

c. The individual's mother's name; and

d. A jurat, as defined in A.R.S. § 41-311, signed by the individual's presumed father:

i. Attesting to the fact that, although the individual's presumed father was married to the individual's mother, the individual's presumed father is not the biological father of the individual; and

ii. Relinquishing and waiving all legal rights to the individual; and

4. The fee in R9-19-105 for a request to amend information in a registered birth record.

**L.** To request the amendment of an individual's registered birth record based on an administrative order or court order establishing paternity, a person shall submit to the State Registrar:

1. A copy of the administrative order or a court order establishing paternity, certified by the issuing entity;

2. The following information, which may be submitted as part of the administrative order or a court order establishing paternity or in a Department-provided format:

a. The information in subsection (A);

b. The name and mailing address of the person requesting the amendment; and

c. The following information about the father to be added to the individual's registered birth record:

i. Name;

ii. Date of birth;

iii. State, territory, or foreign country where the father was born; and

iv. If the person requesting the amendment is not the issuing entity:

(1) Social Security Number;

(2) Race;

(3) Whether the father is of Hispanic origin and, if so, the type of Hispanic origin; and

(4) Highest degree or level of education completed by the father at the time of the individual's birth; and

3. The fee in R9-19-105 for a request to amend information in a registered birth record.

**M.** To request the amendment of the registered birth record of an individual born in Arizona based on the individual's adoption, a state court, the adopted individual's adoptive parent, the married adopted individual, or the adopted individual of legal age shall submit to the State Registrar:

1. A copy of the court order of adoption, certified by the issuing court, or a certificate of adoption with a court seal, after the individual's adoption is final;

2. If the document required in subsection (M)(1) does not contain the following, the person who submitted the request to amend the

83

adopted individual's registered birth record shall submit to the State Registrar:

a. The information in subsection (A);

b. The name and mailing address of the adopted individual's adoptive parent or the adopted individual requesting the amendment;

c. The individual's name established by the court order;

d. Whether the individual's adoptive parents want the information about the individual's parents currently in the individual's registered birth record to be retained;

e. If the individual's adoptive parents do not want the information about the individual's parents in the individual's registered birth record before the adoption to be retained in the individual's registered birth record after the adoption, the following information:

i. The name and date of birth of the individual's adoptive father;

ii. The state, territory, or foreign country where the individual's adoptive father was born;

iii. The individual's adoptive father's Social Security Number;

iv. The name and date of birth of the individual's adoptive mother;

v. The individual's adoptive mother's last name before first marriage;

vi. The state, territory, or foreign country where the individual's adoptive mother was born;

vii. The individual's adoptive mother's Social Security Number;

viii. Street address, city or town, county, and state of the individual's adoptive mother's residence at the time of the individual's birth; and

ix. Street address, city or town, county, and state of the individual's adoptive mother's current residence;

f. If the individual's adoptive parents want the information about the individual's parents in the individual's registered birth record before the adoption to be retained in the individual's

registered birth record after the adoption, the name and date of birth of each of the individual's adoptive parents;

g. Whether the individual's adoptive parents want the name of the hospital, facility, or street address where the individual's birth occurred to be omitted in the amended birth record;

h. The signature of each of the individual's adoptive parents and the date signed;

i. The name of the court issuing the document required in subsection (M)(1); and

j. The date the final order of adoption was granted;

3. If the individual's adoptive parents want the information about the individual's parents in the individual's registered birth record before the adoption to be retained in the individual's registered birth record after the adoption:

a. A written request signed and dated by the adoptive parent or a copy of a court order, certified by the issuing court, containing a request to retain the information in the individual's registered birth record;

b. Either:

      i. A written statement with the notarized signature of the individual's mother, agreeing to retain the mother's name in the individual's registered birth record; or

      ii. If the individual's mother is deceased, a certified copy of a registered death certificate for the individual's mother; and

   c. If a father's name is included in the individual's registered birth record, either:

      i. A written statement with the notarized signature of the individual's father, agreeing to retain the father's name in the individual's registered birth record; or

      ii. If the individual's father is deceased, a certified copy of a registered death certificate for the individual's father; and

   4. The fee in R9-19-105 for a request to amend information in a registered birth record.

**N.** If the State Registrar receives a court order or a certificate of adoption with a court seal for an individual, submitted as required in subsection (M), that names two persons of the same sex as the individual's parents or the

87

individual's mother and father, the State Registrar shall enter the name of each person as the individual's parent in the individual's birth record.

**O.** To request an amendment to an individual's registered birth record when the individual has undergone a sex change operation or has had a chromosomal count that establishes the sex of the individual as different than in the individual's registered birth record, an individual, if the individual is of legal age or is married, or the individual's parent or guardian shall submit to the State Registrar or a local registrar:

    1. A written request, in a Department-provided format, that includes:

        a. The information in subsection (A), including:

            i. The individual's sex currently in the individual's registered birth record, and

            ii. The requested change for the individual's sex to be included in the individual's registered birth record;

        b. The name and mailing address of the individual or the individual's parent or guardian requesting the amendment; and

        c. An affidavit attesting to the validity of the submitted amendment, signed, as applicable, by:

            i. The individual;

ii. The individual's parent requesting the amendment, whose name is included in the individual's birth record; or

iii. The individual's guardian;

2. A written statement on a physician's letterhead paper, signed and dated by the physician, that the individual has:

a. Undergone a sex change operation, or

b. Had a chromosomal count that establishes the sex of the individual as different from that in the individual's registered birth record;

3. If the person submitting the request for the amendment to the individual's registered birth record is the individual's guardian, a copy of the court order establishing guardianship, certified by the issuing court; and

4. The fee in R9-19-105 for a request to amend information in a registered birth record.

**P.** The State Registrar or a local registrar shall amend an individual's registered birth record based on:

1. A request for an amendment, if the State Registrar or local registrar determines, according to R9-19-103, that the information and

89

evidentiary documents in the request for amendment supports the amendment of the individual's registered birth record; or

2. Except as provided in subsection (Q), a court order.

**Q.** The State Registrar or a local registrar shall not amend the date of birth in an individual's registered birth record to a year later than the year in the date currently stated in the individual's registered birth record if any of the information in R9-19-201, required for registering the individual's birth, was received by the State Registrar or local registrar before the later date.

**R.** When the State Registrar or a local registrar amends a registered birth record, the State Registrar or local registrar shall seal the:

1. Registered birth record that existed before the amendment, and

2. Evidentiary documents submitted to support the amendment.

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Circuit Rule 32-1(a) because it contains 11,852 words according to the word-processing system used to prepare the brief.

2.  This brief complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in fourteen-point Book Antiqua type style.

Dated this 13th day of February, 2026.

By */s/*       *Nathan Arrowsmith*

## CERTIFICATE OF SERVICE

I certify that I presented the above and foregoing for filing and uploading to the ACMS system which will send electronic notification of such filing to all counsel of record.

Dated this 13th day of February, 2026.

*/s/    Nathan Arrowsmith*